Next case will be 207-1401, Millennium Lumber Company, Distribution Company Limited. I'd like to address the court's questions of course. I'd like to point out some points about some of the authority the court relied on that was not really discussed thoroughly in the briefs, and emphasize a few points of our brief in connection with three issues before the court. The first issue of course is whether the court erred in granting summary judgment for classification under 4407 as simple dimensional lumber, and there are genuine issues in the material fact about whether that class or kind of merchandise required recutting. The second issue is whether summary judgment lies for classification under 4418 because the merchandise is in fact classifiable as meeting the requirements for builder's joinery or carpentry. And finally, the third issue is if the merchandise is not sufficiently advanced to fall under 4418, does it nevertheless have parts and functions that give it an essential character other than simple dimensional lumber in 4407 so as to be classified under heading 4421. If the court of national trade was correct that additional cutting was required, then I gather you would not challenge the decision. You'd assume that there were no disputed issues there. Challenge the decision on 4407? Yeah. What I'm trying to get at is I did a little research to sort of try to figure out what, this is not a completed truss. I mean it's not one that's all put together and just comes off the truck and is ready to go into the room. So it's going to be a part of a truss if it falls in the classification that you seek to put it. So it looks to me like it's got to be, the part has to be the top cord, not the bottom cord. That's correct. Because the bottom cord is required at every angle. Well, the evidence in the record shows that the particular merchandise that was imported is recognizable for use in the top cord, not in the bottom cord. With respect to the 4407... That's the issue, whether it's recognizable or not. To a truss profession at the time of importation. Shouldn't it be recognized as something else? That's correct. So the burden given Rollerblade and the burden on your side was to prove that no reasonable fact finder could find that this 204 with a 90 cut on one end and an angle cut on the other could have been used for something other than a top cord truss. That's correct, Your Honor. And if you look closely at the court's analysis to reach that conclusion, it really could have been the burden for you to be able to show that no person would find it could have been used for something else. In part, that's our burden. And it could easily be used for a whole lot of other things, right? And you could use it as a support. You can use the angle cut to lean up against something. You can cut the angle cut off. There are lots of things you can do with a 5-foot or 10-foot 2x4 that's 90-degree cut on one end and angular cut on the other. What could be done after importation is beyond the control of the importer. The importer really can only classify or can only produce something and classify it according to its condition at the time of importation, which is why the court rejected it. How was it sold in the marketplace? It was ordered by truss manufacturers on a purchase order with the specifications, labeled as truss components, and offered as truss components, manufactured by a company that creates trusses. There's no question commercially that the truss manufacturer who bought these saw them and specified them as truss components to be used in trusses. They, in fact, under the requirements of customs at the time of entry, were required to certify that the end use would be without recutting the angle in trusses. Do you agree that they had to be cut 10% of the time? No, Your Honor. Mr. Aronian's affidavit indicated that for reasons other than the nature of the goods, at the time of the condition as a truss component, it was recut. I'm referring to the customs note that said 90% of the time it didn't need to be cut. That's correct, Your Honor. If we relied on that, would you win? I think that shows... If 10% is the only cut-off of the cut-offs, would that be enough for you to say that they're significantly advanced enough to be recognized as a truss? Sort of like the laxative commercial when we talk about prunes, six enough is twelve too many. I think what we need to keep in mind is that the court found that recutting was required for the merchandise as a class or kind of merchandise, for classification as a class or kind of merchandise. Consequently, we submitted that there is any evidence showing that, in fact, these elements did not have to be recut and, in fact, were used in their condition of importing, then it's simply not the case that they required, as a class, recutting. We have customs' own evidence of that. We have affidavits... That's the 90% figure you're saying? Of the millennium customers they visited, there was, I think, 10%, 50%, 100%, and then Mr. Wengen's affidavit said 90%. Of the truss manufacturers they visited where they said 100% had to be recut, none of those were millennium customers. So we think that evidence from the Runyon affidavit and from the certificates were either under oath or subject to penalty for false statements of customs. In contrast, the court's case relied entirely on the government's expert opinion, which we submit, if one reviews the deposition carefully, is filled with incorrect assumptions of fact. He had no knowledge of how recutting of truss manufacturers was done in the southwest United States, where the great majority of these went, where recutting is not required for use in gutters and the like, because they have no gutters in Arizona, particularly in the construction. And finally, he was unable to explain... I think that the opinion of the expert is definitely colorable, because he was unable, as customs said in his brief, to explain the white elephant in the room that nobody wants to talk about. Why does shrinkage and swelling require recutting of truss components shipped individually, but when you put those individually wrapped truss components with a kit, customs finds those sufficiently advanced to be classified under 4418? This is an interesting point to me. At the point of importation, someone is supposed to observe these articles, whether they're individually or whether they're shrink-wrapped in a big package, so I don't know who that observer is. But someone is supposed to look at this and say, well, is this product too far developed? It's being brought so close to a truss board that it couldn't be viewed as cut lumber. I mean, it's lumber with a cut on it, right? It's more than that, Gary. It is recognizable for certain? Two points in response to that. First of all, I asked the expert that. I said, what is a person supposed to see? Isn't that burden on you and your role today to put on some testimony from somebody, from your side, and say, I'll swear on a stack of Bibles, that no reasonable person could understand this piece of cut lumber to be anything other than a truss board? The evidence of record, Your Honor, shows that. You haven't put that testimony on. It was in the record that we had. That was not my testimony. I didn't see, on your behalf, in the record. The record shows that. Because nobody could truthfully give that testimony, right? The record of time of importation shows that the entry documents, which included invoices, identified them as truss deployments, and the specific specification of the truss manufacturer. You can take a five-foot two-by-four square cut on both ends and label it a truss board because it's going to be a splice angle. Sir, you can have an absolute square cut on both ends of a piece of lumber. That would not be the case. And you can put it in a package and call it a truss board. The absence of an angle cut, Your Honor, would indicate to anybody looking at the time of importation. The only reason you would find this stuff qualifies is because it would be used in a splice. That's because the square end cut can be spliced. That's the point of the square end cut. Two-sided points can also be spliced. But that would not be a truss component. That would probably be a wedge. Your Honor, didn't your brief kind of show us what's going on here? It says that due to the price differential between truss components and other kinds of lumber, people often import truss components and use them for other purposes because they're cheaper under the Canada Softwood Act. Softwood lumber? Yeah, the U.S. Canada Softwood Lumber Agreement. It's on page 18 in your brief. Customs documents suggested... How do you get around the point that people do import trusses and use them otherwise because they're cheaper to import as a truss and then use otherwise? The recutting, if in fact it was done, is indicated because of artificial economic distortions in price. That recutting has nothing to do with the condition of the goods at time of importation. The recognizability is a structural component for structural purposes. In fact, you would probably say to us that's even more evidence that it was a truss because that's why they were getting it at the cheaper price. The irony of this case, Your Honor, and I think the reason we're standing before you because of Customs Enforcement, is they were concerned with potential abuse of items coming in as legitimate truss components and then being used for standard lumber because of price distortions or a more advanced... Then why aren't they correct to impose the higher duty if they're going to actually be imported as trusses and used for something else? Your Honor, we can only respond... You have to look at the immense amount of evidence that this was only ordered by truss components. It wasn't ordered by lumber yards or truss manufacturers. It wasn't ordered by lumber yards or anything like that. It was ordered for truss use according to their truss specifications. We have evidence that they provided certificates that that's what we're going to use it for. And we have the customs notes and the affidavit of a person who was a customer saying it was. One cannot control entirely what one does with the goods, especially in these types of products. I want to return to Judge Klinger's question about the cut because I think an important thing to look at in the analysis of the court's opinions when they were looking whether this is mere material or an unfinished product, the court only focused on the cut. And it's important to bear in mind that there are several indicia of this item as a truss component that were all present and all required before shipment. We have not only the cut, which of course is a great deal towards the central character, but the species of the wood, the grade. It couldn't just have any grade. It had to be a high grade of lumber. It had to be machine stressed grade, MSR, which means it has tensile strength. It is loaded. It can also be true and is true. It must be required for rafters, roof struts, and beams, which are listed in the ENs as specified examples of items falling under 4418. There really is no structural difference. I think the court, when it found that it has to be advanced more, didn't fully appreciate that we're dealing with lumber that's been recut and has different applications. There's different types of lumber. There's only so much you can do to it. You can do the angle cuts, but it has to have all these engineering values. You're going to need to recut them out in one statement. I will take 40 more seconds if I may, Your Honor. One of the things I wanted to flag to the court is that the court, in deciding whether or not it was an unfinished part, falling under 4418, or mere material, she cited the case of Lee Enterprises versus the United States. And Lee Enterprises was cited for the proposition that to qualify as unfinished part, it has to be identifiable and commercially fit and dedicated to use and incapable of being something else. If you look at the facts of that case, it's actually destructive because they actually helped millennia. This is a case where the goods came in. They were subsequently cut and trimmed. And when they came in, they were not designed. They were printing press plates, metal plates, trimmed and cut whole. And they were not designated to a specific purpose. And the court found they were unfinished parts because what was done to them subsequently was not substantial manufacturing processes. So those are really the situation in our case. So we submit that the facts of that case actually helped us. Let me just close up my opening statement with talking about 4421. 4421 fits these circumstances. There's clearly evidence it's more than just dimension one. In fact, it can't be graded. Once it's cut with an angle, it cannot be graded, as the record shows, as dimension one. It's clearly something more. If the court finds that it doesn't reach the level of being 4418, where its parts are functioned, place it somewhere in between, it's clear that 4421 is the appropriate one. Thank you, Your Honor. I'll reserve one other minute. May it please the court. Your Honor, this part falls within 4407. 4407 is an eonomic provision. It's nothing to do with class or kind. It's mere definition. Wood sawn or chipped lengthwise, sliced or peeled, whether or not plain, standard, or finger-jointed, of a thickness exceeding 6 millimeters. Undisputed facts show that Millennium is longer quality than that definition. It's ordered. It's used. It's everything in the marketplace designated as a truss. Why isn't it so classified? Well, to take each point, Your Honor, when it's ordered, it is those dimensions, the angle, those even foot lengths. They are not specified by the customer. In fact, what it is, is that these things, and if you look at the Billings Deposition, which is in the record, at A112, which says the customers order the product not knowing what specific truss it's going into. If you look at page A117, the software used to produce any sort of designs for these components, those are hypothetical. Those are not something that the customer has produced and then orders something, orders a piece, and that piece is supposed to go into that specific thing. Are you really worried that this is going to be an abused provision? Are you worried that people are going to order trusses because it's cheaper wood and they use it in other ways? Am I worried? Is that why it's getting classified this way? Well, Your Honor, it has to... Because it's ordered as a truss, it's marketed as a truss, it's shipped as a truss, received as a truss. Why isn't it a truss? Well, Your Honor, if I may clarify, it is not ordered as a truss. It's not even ordered as a specific piece, which is what I'm trying to get at. No customer is saying, I need this angle at this length. These boards come in in even foot lengths with a superficial cut at one end. Everything else tells you that it's... It's not a superficial cut. It's a precise cut at various angles between whatever the degrees were that we're standing in front of. It's mainly a 76-cut angle, and there's nothing to show that it fits into anything in particular. It doesn't show that that is recognizable as a part when it comes in, part of the truss when it comes in across the board. It does not show that. And it's sold to truss manufacturers. Truss manufacturers can also buy 2x4s, 2x6s, regular 4407 wood, put the cut on their own. As you correctly observed, Your Honor, those pieces cannot be bottom cords. Those pieces cannot be webs. Those pieces can only be top cords with square cuts at the ends. Your own attorney's notes said that 90% of the time, this can be put right into a truss. It doesn't have to be recut at all. Now, assuming that this is the customs officer who's looking for recuts as evidence of the classification he hopes to make, 90% still leaves you with a pretty overwhelming impression that this is a truss that is assembled as a truss without recutting. Well, Your Honor, first of all, that only addresses the angle cut end. It doesn't address the square cut end. Those notes, when everybody was going there to look in Arizona, we were only looking at the angle. If you look also at all the evidence in the appendix, if you look at Mr. Brennan's affidavit, he says that he uses everything except for 10% of the time. If you go to the second paragraph, paragraph 9, on that same page, it also says that... You're saying that testimony or that statement was that 90% related to the angle cut sort of thing. Correct. Because of the fact that it's got an angle on it 90% of the time, you can probably slap it up there and you'll be satisfied with whatever the angle is. So the notes... It didn't address the question of whether the square end needed to be sawed. Correct. It doesn't address the square end. It also addresses only one of those manufacturers. But this is summary judgment. If there's... Here we are debating the facts as to which end is under examination and how much is it 90% or 95% and was it ordered or wasn't it ordered. All these are facts, facts, facts. This is summary judgment. Can you really sustain it with so much factual discussion going on right here as we speak? Yes, Your Honor. And the reason is because the facts which establish that it's correctly classified under 4407 are undisputed. We know that it's sawed wood. We know that it comes in standard even foot length. We know from the explanatory notes that you do not have to have a square cut at both ends. We know all those. We know that the thickness is more than 6 millimeters. Absolutely. My answer to what I'm simply saying is the summary judgment point that because of an older claim, because of the way summary judgment works on classification cases, the burden is really on the plaintiff here to disprove your assertion that the classification is correct. Yes, Your Honor. And to do so, they have to have an affidavit with somebody who says elsewhere on a stack of Bibles that this stuff is recognizable only as a trust part. Yes, Your Honor, because we have the presumption of correctness in the 28 U.S.C. 2638. Assuming that that's also, please identify for me something that would pass muster as a trust part at the point of importation. I'm not talking about old trust. I'm talking about just give me in words what piece of lumber could qualify as a trust part. Well, Your Honor, it's difficult to do that only because every case is different and has to. It's a particularized case. But if we were to talk in general with customs guidelines and headquarters ruling and everything that was cited... What you would say, for example, if it were in the lower part of the prohanged or both ends? If there was a specific design drawing, a certified trust drawing, that shows that this particular piece that comes in, particular angle-cut ends that fit right into that drawing, if that would be evidence, and also that it would not be further cut upon importation, that it would fit right into that trust, I think those things might be something that customs would consider to be an actual recognizable part of the trust. The thing here also, Your Honor, which I'd like to point out is that Millennium offers... You have a shrink-wrapped package of parts, including the metal pieces that are used to join the things up, and in that package could be a 5-foot square cut on both ends, 2-foot, that was going to be used for placing, right? It would pass as a part. It would not pass as a part if you're just importing as Millennium did a whole bunch of the same types of parts, because it's not recognizable. It doesn't show that it's recognizable. Splicing is not something that's commonly done all the time. It's not something that you cross the border with that. It's, oh, that's definitely used for splicing. What makes it recognizable as such? There's something there. It's the same thing with Millennium's lumber. They import lots and lots of the same type of lumber, 10 feet, one angle, square cut on one end, and that's it. They're not pieces of anything. They're not pieces of a truss. They're just wood. It's 4407 wood, and anyone can use it as anything. Just because it's possible to be used in a truss doesn't mean it's not possible to be used as something else. It could be used anywhere. We do have a lot of customer certificates that say, not only do we recognize this as a truss, that's what we use it for. 100%? Why isn't that exactly the evidence that Judge Klobuchar is referring to? Somebody looks at it. Not only do they recognize it, that's what they do with it. Because, Your Honor, those end use statements, if you look carefully at the wording, it addresses, again, only the angle cut side. It never says that it's not reshaped or altered or cut on the square cut end. So while it may be true that they might use the angle, it does not mean that they use that piece of wood, as is in its condition as imported, that is recognizable as a piece of a truss. That's what it shows. If you look at what Millennium is arguing, Millennium points to all of these things as factors, as being things that are taken out of Classification 4407.  Or the recognizable part that would make it classifiable in 4418. Just because it's not 4407 doesn't mean that it's automatically 4418. Doesn't mean that it's automatically 4421 either. If they stamp for a truss on the side of it, does that change it? No, Your Honor. Just a label? I don't believe that that would do anything to it at all. Just because it's labeled that way? That's recognizable then. And if it's... I tend to agree with you when you stamp a label on it, because in fact that's the way it's used. That's what they do with it. But we don't have any evidence to say that's in fact the way it's used as is. Well, now we're back to facts again, aren't we? Because we have a lot of customer certificates that say that's why we order it and that's what we do with it. Well, if I could again try to clarify. It's not simply that the angle side is used or the square cut end is used. It's not really the whole thing. We have to consider the product as a whole. What about our line of cases that says that proof of use is not sufficient to establish that something is sufficiently finalized? Isn't there a body of law that tells us that the actual proof of use isn't really relevant? Well, Your Honor, then we're talking about a different provision. Here we have a phenomenon. And use is a factor when you're determining the identity of something, just as all these other factors are, I'm thinking. But it's not an actual use provision. It doesn't say if it's actually used as X, then it must be X. That's not what this provision says. This provision says that it must be builder's carpentry and joinery. And then the explanatory notes tell us that it can be as recognizable unassembled pieces, e.g., prepared tenons, mortises, dovetails, or other similar joints. And then it says that carpentry refers to woodwork, such as beams, rafters, and roof struts. Those beams, rafters, and roof struts are not, as Mr. Junker was trying to suggest, the same as what we have here, because you still need to have prepared the tenons, mortises, dovetails, or other similar joints. There's got to be something else about it. It's not simply a big piece of wood that's used as a beam or rafter. You can cut it. There's got to be something else to it in order to fall within 4418. So it's not, no. So I hope I answered your question, Your Honor. It's not simply use that we have to look at. Um, let's see. I think one of the other things that was brought up was cost. The cost of everything that is used, because it's cheaper to use it as 4407 lumber, regular lumber, than it is to use as a truss component or anything else. I think that cuts actually towards an argument that it is regular lumber, 4407, because that is what the industry recognizes is most useful as regular lumber. So if it's going to use it as regular lumber, cut it. Cut off the angle and do something to it. And I think, actually, that supports our argument. Um, and I can't, I can't emphasize enough that there are no facts in dispute here. You keep saying, Judge O'Leary, you talk about facts, facts, facts, facts. These are not, these are not material facts to this classification. These facts, if you look at it, demonstrate that the entire piece is altered. There is something altered about it, as I was saying before. It's in one end or the other, something is altered. So the rugging affidavit, the billows affidavit, A262 to 266, they all indicate that there is some sort of cutting that occurred. Maybe it's not the angle end, it's the square cut end. There's some sort of alteration. Um, the actual use statements only address the angle side. It doesn't address the square cut side. Um. Well, they did say that in southwestern United States, some people prefer to have a square cut on the end of the truss than sticking out from under the roofline, right? They did say that, but it doesn't say that that's the way it is all the time. That's not something that's standard industry practice. Um, Dr. Wieste, we were talking about evidence. We actually, not only did Millennium fail to meet its burden of proof, but we have affirmative evidence in the form of Dr. Wieste. He's our expert, and he says that square cut ends are uncommon. For the sake of argument, let's agree that it's not sufficiently advanced to be recognizable. Why not then classify it as other wood? I'm sorry, Your Honor? Why not the alternative classification as other articles of wood? There's nothing to indicate that there are any characteristics of Millennium's lumber that would put it into 4421. The way Chapter 44 is organized is that you have least processed wood and the most processed wood. So under 4407, you have regular lumber that can be used as a raw material. Then you have 4418, something that's used for building, and then you have some sort of special joinery, some joint or something. It's in 4421, you're going to the other, but it has to be more processed, even in 4418. We don't have that here. What we do have is regular lumber satisfying the terms of 4407, and it's properly classified as such. Anything else, Your Honor? You're saying it has to be more processed than 4418? Yes. Because of the way it lines up in the classification, you're getting more? You're getting more processed wood as you go along in the chapter. Yes, that's right. All the characteristics that Mr. Jenkins brought up, those are the same characteristics. Does that category include something like a wood cuckoo clock from Switzerland that's very highly detailed? In general, that's the way it goes. You have logs, then you have lumber, and you name things. So yes, it progresses that way. Logs, lumber, then you have furniture, stuff like that. So whether or not cuckoo clock in particular is there, I don't know. But that's the general idea, yes. Thank you, Your Honor. Thank you. Thank you, Your Honor. I will talk fast. First of all, Council argues that 4407 is an EM-nominated provision to which our goods are completely described. I would note that the explanatory notes to 4407 exclude items that are builders jointly in carpentry under 4418. So the issue is not whether we just qualify in 4407, but whether additionally we qualify with the elements of 4418. Under 4418, you can't be in 4407. That's correct. It's mutually exclusive, Your Honor. And I would point out that with respect to items identified as carpentry under 4418, the examples are booms, are beams, roof struts, rafters, that are advanced beyond dimensional lumber. And they are advanced. And contrary to what Council is saying, that all we've shown is an angle, I reiterate, and the Court did not analyze. But she put good emphasis on the fact that these are not packaged together. They are packaged together. You don't have a truss package. It's shipped as individual components, not as a package. That's correct, Your Honor. But going back to whether it's builders jointly in carpentry, it has not just the angle, which incidentally they were really concerned about in the certificate. Has the angle been recut? What does that tell you about what Customs is concerned about in this being qualified as a truss? But in addition, it had the structural capacity for load-bearing capabilities, engineering values, species, grade, tensile strength, and joints for assembly. That is building carpentry under 4418. She indicated also that cutting occurred on all matters, whether it was square in That's simply not what the affidavits in the Customs note said. They were used in their condition, as is in their condition of importation. Once again, there was a fundamental misunderstanding of the requirement for specific design. Customs seems to have this requirement, it has to fit into a specific design to be recognizable as a truss component, while taking the illogical position that if it in fact fits in multiple truss designs, it's not. In point of fact, I submit they have it backwards. If a truss component submits in multiple truss designs, it's even more recognizable as a truss component. Thank you.